LEWIS, ANDERSON, FOARD & CO. v. KOTZEBUE TRADING & TRANSPORTATION CO. (LINDEBERG, Garnishee).

(District Court, W. D. Washington, N. D. September 8, 1916.)

No. 2898.

1. SHIPPING ☞53—CHARTERER—OWNER.

Where, under the terms of a charter party, the owner furnished the captain and crew of a vessel, though the general direction in which it should proceed was to be determined by the charterer, and the captain and crew were to be paid by him, the owner retained control and navigation of the vessel, and the charterer did not become the owner pro hac vice, so as to become liable for the negligence of the master and crew.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 214–218, 225; Dec. Dig. ☞53.]

2. SHIPPING ☞124—LOSS OF CARGO—NEGLIGENCE.

Though a vessel became stranded, and part of the cargo was jettisoned by the master's orders, the master and crew cannot be found guilty of negligence in navigating the vessel, where there was no testimony showing want of skill or negligence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 458, 466; Dec. Dig. ☞124.]

3. SHIPPING ☞138—CHARTERER—MARINE RISK.

Under Harter Act, Feb. 13, 1893, c. 105, § 3, 27 Stat. 445 (Comp. St. 1913, § 8031), declaring that, if the owner of any vessel transporting merchandise or property shall use due diligence to make the vessel in all respects seaworthy and properly equip the same, neither the vessel nor her owner shall be held for damage or loss resulting from faults or errors in navigation, or in management of the vessel, or for losses arising from dangers of the sea, act of God, etc., a charterer of a vessel, though the owner retained control of navigation, assumed the marine risk on the cargo, and

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cannot, where the vessel was stranded and the cargo jettisoned without negligence of the master and crew, hold the owner liable.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 492; Dec. Dig. ☞138.]

In Admiralty. Libel by Lewis, Anderson, Foard & Co. against the steamship Corwin, which was claimed by the Kotzebue Trading & Transportation Company, and in which Jafet Lindeberg was summoned as garnishee. Decree for libelant, and for claimant over against garnishee.

James Kiefer, of Seattle, Wash., for libelant.

George D. Schofield and C. D. Murane, both of Seattle, Wash., for garnishee.

Andrew J. Balliet, of Seattle, Wash., for respondent.

NETERER, District Judge. On September 4, 1914, the Kotzebue Transportation & Trading Company executed and delivered to Jafet Lindeberg a charter party for the steamship Corwin, as follows:

"That the owner * * * agrees to let, and does let, said S. S. Corwin * * * to the charterer for the term of thirty (30) days from, and including the 4th day of September, 1914, for a voyage from the port of Nome to Wrangle or Harold Islands in the Arctic Ocean. * * *"

"The charterer shall pay for the use and hire of said vessel, the sum of one hundred dollars ($100.00) per day from and including the said 4th day of September, 1914, until said vessel is returned to the port of Nome, and for a period not to exceed thirty (30) days; it being distinctly understood that, if said vessel does not return to said port of Nome within thirty days, that the charterer's liability for said hire of said vessel shall cease and terminate after such period.

"The charterer shall provision and supply said vessel for said voyage, and shall pay the master and crew, the regular wages which they receive on said vessel, for said voyage, and in the event of said vessel being caught in the ice, or for any reason being unable to return to the port of Nome during the present open season of navigation, the charterer agrees to pay said master and crew of said vessel their said wages until they are returned to the port of Nome, and for a period not exceeding one (1) year.

"The owner shall furnish said vessel with a master and full crew of competent officers and seamen to man and navigate said vessel on said voyage, the wages of such crew and master to be paid by the charterer as aforesaid. And the owner assumes all liability for any injury or damage sustained by said vessel on said voyage, or the crew of said vessel while on said voyage; and the owner further assumes all risks of the loss of said vessel on said voyage."

Upon the execution and delivery of said agreement, Lindeberg delivered to the captain of the steamship the following instructions, in writing:

"As charterer of your ship I hereby direct you to proceed with all possible speed consistent with prudence to the rescue of the members of the Steffanson Expedition now marooned on Wrangle and Harold Islands. You will render the United States revenue cutter Bear all assistance possible, and keep said ship advised of your whereabouts and successes or failures. If desired by Captain Cochran or Captain Bartlett, you will carry the latter or any other persons from the Bear that you may be able to. You are provisioned and equipped for one year, such provisions and equipment to be used by you as necessities may arise, the balance, if any, to be returned to me at Nome. Besides the crew of your ship, I am sending with you a dog driver, who will

have charge of the dog teams to be used under your direction. You will also carry two skin boats as part of your equipment. In case you are unable to return within chartered time, present wages are to continue, not exceeding one year, same to be paid to Corwin office in Nome and disbursed as directed by the persons entitled to such wages, and such direction should be left before departure."

The libelant commenced an action to recover $1,320.88 for supplies furnished to the steamer prior to the date of the charter party, and had a writ of garnishment served upon Lindeberg. Denial of liability was made by Lindeberg, upon which issue was joined, and cross-libel was filed by the claimant against the garnishee to recover balance due, to which issue is taken by Lindeberg, and the matters at issue were referred to the commissioner to take testimony and report his findings. It is stipulated that there is due to the libelant the sum of $1,319.48, less $176.91, heretofore paid in the way of dividends.

The commissioner found as a fact that at the time the charter party became operative the steamship had on board engine room stores, oils, etc., $307.55 in value; meats for use of crew, $339.08; that the garnishee, for the purposes of the expedition, placed on board the steamship merchandise, provisions, lumber, wireless outfit, etc., $7,500; oils, meats, etc., $2,768.78; that $50 of the $7,500 was expended for wireless outfit and $175 for a victrola, which two last articles were retained on board the steamship after the termination of the charter party; that it is contended by Lindeberg that goods to the value of $4,843.38 were lost or jettisoned during the stranding of the vessel en route; that Lindeberg paid on account of the charter party $2,752.-10, and paid the further sum of $345 for use of the launch in lightering cargo, and $60 to stevedores; also paid $505 to O. D. Cochran, attorney for the respondent, being a claim for attorney's fees, and had assigned to him such account; that $307.55 worth of oils and engine room stores and $339.08 worth of meat, the property of the respondent, were used during the operation of the vessel under the charter party, and that $97.25 was paid by the respondent for launch and lighterage services during the charter party; that Lindeberg had possession of the vessel for 25 days.

The testimony shows that the respondent paid $1,741.80, less $23.25, being $1,718.55, to the master and the men for services rendered upon the vessel during the voyage in issue.

Exceptions were filed by the several parties to some of the findings, and the matter is now before the court upon such exceptions, and the further determination of the court as to the sum earned under the charter party and the liability of the respective parties for the indebtedness set out.

Lindeberg contends that the charter party was a mere contract of affreightment, and that the respondent agreed to furnish competent officers and crew, and that it did not do so, and by reason of incompetency the vessel became stranded, resulting in loss of stores placed upon the vessel, which were jettisoned by the master's orders, and that in any event the respondent is liable in general average, and no

recovery can be had, as the value of the vessel would preclude recovery.

Libelant and respondent contend that the charter party amounts to a demise of the vessel, and that if the crew was negligent, which is denied, that it was the charterer's negligence, and that there is a balance due on account of the charter party and costs and expenses paid by the respondent chargeable to the charterer.

[1] The manager of the respondent, and who executed the charter party agreement with Lindeberg, testified that the vessel was to be in the possession of the respondent and it was also to control its navigation; that Captain Healy was acting on behalf of the owner of the vessel. I think it is plain that the control and navigation of the vessel remained with the owner, although the general directions in which it should proceed were determined by the charterer. I think this case clearly falls within the decision of the Supreme Court in New Orleans-Belize Royal Mail & Central American Steamship Co., Ltd. v. U. S., 239 U. S. 202, 36 Sup. Ct. 76, 60 L. Ed. 227. The contention of the libelant that the charterer became the owner pro hac vice can therefore not be sustained.

[2, 3] I think the contention of the charterer as to negligence of the seamen in navigating the vessel must fail. There is no testimony upon which to predicate any act of omission or commission showing want of skill or relation of conduct to show negligence. I also think that the charterer assumed the marine risk on the cargo, and under section 3 of the Harter Act (27 Stat. 445) no liability is disclosed in this case by the testimony under any circumstances.

The testimony shows that there was due from Lindeberg, on account of the charter party, $307.55, engine room stores, etc., and $339.08, meats for crew, etc.; $2,500 for the use of the vessel for 25 days; $1,718.80 on account of the crew; total $4,865.43; that he paid on account $2,752.10, leaving a balance unpaid of $2,113.33. From this should be deducted the claim held by Lindeberg, purchased from Cochran, $505, and $225 for victrola and wireless apparatus retained on the vessel, leaving a net balance of $1,386.33. Judgment and decree should be awarded to libelant, and against respondent and Lindeberg as garnishee, for $1,142.57, and in favor of respondent, and against Lindeberg, for $243.76, the balance of the sum found due.

A decree may accordingly be presented.